UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

MARK ANTHONY REED,

    Plaintiff,

v.

ROBERT MILLIGAN et al.,

    Defendants.

_____/

Case No. 2:23-cv-1

Honorable Maarten Vermaat

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 5.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]however, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Smith. The Court will also dismiss, for failure to state a claim, the following claims against Defendant Milligan: (1) Plaintiff's Fourteenth Amendment due process claims; and (2) Plaintiff's civil conspiracy claim. Plaintiff's First Amendment retaliation claim against Defendant Milligan remains in the case.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

about which he complains occurred at that facility. Plaintiff sues Food Service Director Robert Milligan and Acting Lieutenant Unknown Smith.

Plaintiff alleges that on November 7, 2022, he was laid in from his job assignment within the chow hall by Defendant Milligan because Plaintiff had placed baked beans in a Styrofoam bowl. (ECF No. 1, PageID.9.) The incident occurred after Plaintiff returned to the kitchen from a medical call out, and Defendant Milligan told him that he should have put the beans in hard trays, not bowls. (*Id.*, PageID.9–10.) Plaintiff responded that he had been putting the beans and other hot items in the bowls. (*Id.*) Plaintiff told Defendant Milligan that he would be writing a grievance "because [Defendant Milligan] was only doing this because [Plaintiff] had just written two more grievances on him for placing these hard trays in the vegan/religious room." (*Id.*, PageID.10.) Plaintiff indicates he wrote those grievances because workers could not properly clean those trays. (*Id.*)

Plaintiff submitted a grievance "about being laid-in not knowing that [Defendant] Milligan had written a misconduct." (*Id.*, PageID.11.) The next day, Plaintiff was called to the control center and was told that Defendant Milligan had issued him a misconduct for destruction or misuse of property. (*Id.*) Prior to Plaintiff's misconduct hearing, he was removed from his job assignment per Defendant Milligan's request to the classification director. (*Id.*)

Plaintiff appeared before Defendant Smith for his misconduct hearing on November 14, 2022. (*Id.*) According to Plaintiff, Defendant Smith told him that the evidence Plaintiff submitted "was not important to the hearing, and that he [did not] believe that Milligan would retaliate against" Plaintiff. (*Id.*) Defendant Smith found Plaintiff guilty, stating that he believed Defendant Milligan told Plaintiff to "use the bowls for all the hot food." (*Id.*, PageID.11–12.)

Plaintiff alleges that three days later, on November 17, 2022, food service staff had to prepare all meals because of an emergency count. (*Id.*, PageID.12.) When Plaintiff went to get lunch, he received a bowl with beans and vegetables in it. (*Id.*) Plaintiff was told that Defendant Milligan had prepared the meal. (*Id.*) Plaintiff then wrote to Warden Brown (not a party), asking him to "please hold on to the video evidence showing that [Plaintiff's] food that [Defendant] Milligan had prepared was in bowls, because this was the very same thing in which [Defendant Milligan] had written a misconduct on [Plaintiff] about to have [Plaintiff] removed from the work assignment." (*Id.*) Plaintiff also contends that he later learned that Defendant Smith helped Defendant Milligan write the misconduct and, therefore, Defendant Smith should have recused himself as the hearing officer. (*Id.*)

Based on the foregoing, Plaintiff asserts First Amendment retaliation claims against both Defendants and a Fourteenth Amendment due process claim against Defendant Smith. (*Id.*, PageID.7.) The Court also construes Plaintiff's complaint to assert Fourteenth Amendment due process claims against Defendant Milligan premised upon Plaintiff's removal from his job assignment and his issuance of an allegedly false misconduct, as well as a civil conspiracy claim against both Defendants. Plaintiff seeks injunctive relief, as well as compensatory, punitive, and nominal damages. (*Id.*, PageID.14.)

## II.   **Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

5

court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    **A.    First Amendment Retaliation Claim**

Plaintiff contends that Defendant Milligan violated his First Amendment rights by retaliating against him. Specifically, Plaintiff argues that Defendant Milligan issued a misconduct ticket to him in response to Plaintiff's grievances against him. (ECF No. 1, PageID.7.) A liberal construction of Plaintiff's complaint suggests further that he alleges that Defendant Milligan had him removed from his job assignment in retaliation for the grievances as well. Moreover, Plaintiff

appears to raise a retaliation claim against Defendant Smith, as he indicates that "[i]t will be stated and shown that both Defendant(s) named herein retaliated against the Plaintiff for filing grievances." (*Id.*, PageID.6.) Presumably, Plaintiff bases his retaliation claim against Defendant Smith on the fact that Defendant Smith found him guilty of the misconduct ticket issued by Defendant Milligan.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff engaged in protected conduct by filing grievances about Defendant Milligan and by stating his intent to file a grievance regarding the issue with the food bowls. *See Smith*, 250 F.3d at 1037; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by threatening to file a grievance). Plaintiff has also alleged that Defendant Milligan acted adversely by issuing the misconduct and by requesting that Plaintiff be removed from his job assignment. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) (discussing that the issuance of a misconduct ticket can "constitute[ ] an adverse action"); *see also Bradley v. Conarty*, No. 17-2340, 2018 WL 5883929, at *2 (6th Cir. Sept. 13, 2018) (noting that "the loss of a prison job can

7

in some circumstances be deemed an adverse action for purposes of a retaliation claim"). Finally, Plaintiff's allegations suggest that Defendant Milligan took these actions on the same day that Plaintiff stated his intent to file a grievance and a few days after Plaintiff had filed grievances against Defendant Milligan regarding other issues. Although Plaintiff has by no means proven retaliation, taking Plaintiff's allegations as true and in the light most favorable to him, the Court may not dismiss on initial review Plaintiff's First Amendment retaliation claim against Defendant Milligan.

Plaintiff, however, fails to state a plausible First Amendment retaliation claim against Defendant Smith. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]" (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). Here, Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts from which the Court could infer that Defendant Smith retaliated against Plaintiff by finding him guilty of the misconduct because Plaintiff filed grievances against Defendant Milligan.

Accordingly, Plaintiff's speculative allegations fail to state a First Amendment retaliation claim against Defendant Smith, and such claim will be dismissed.

### B.      Fourteenth Amendment Due Process Claims

#### 1.      Removal from Job Assignment

The Court has construed Plaintiff's complaint to assert a Fourteenth Amendment due process claim against Defendant Milligan premised upon his successful request to have Plaintiff removed from his job assignment.

The Fourteenth Amendment protects an individual from deprivation of life, liberty[,] or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

Plaintiff's claim fails at the first step, however, because "no prisoner has a constitutional right to a particular job or to any job." *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *see also Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (discussing that prisoners have no constitutional right to rehabilitation, education or jobs); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (holding that there is no constitutional right to prison employment); Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *See Carter v. Tucker*, 69 F. App'x 678, 80 (6th Cir. 2003) (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991); *James v. Quinlan*, 866 F.2d 627, 629–30 (3d Cir. 1989)). Consequently, Plaintiff's loss of his job

assignment in the kitchen did not trigger a right to due process, and his Fourteenth Amendment due process claim will be dismissed.

### 2. Misconduct Proceedings

Plaintiff contends that Defendant Smith violated his Fourteenth Amendment due process rights by refusing to acknowledge the evidence Plaintiff presented during his misconduct hearing and by falsely stating in the final report that Plaintiff "submitted no further information in defense of the charge." (ECF No. 1, PageID.7.) Plaintiff also suggests that Defendant Smith denied him a fair and impartial hearing. (*Id.*) The Court has also construed Plaintiff's complaint to assert a Fourteenth Amendment due process claim against Defendant Milligan premised upon the issuance of the allegedly false misconduct ticket for destruction or misuse of property.

A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

MDOC policy provides that destruction or misuse of property is a Class II misconduct. *See* MDOC Policy Directive 03.03.105, Attach. B (eff. Apr. 18, 2022). Class II misconducts are minor misconducts for which Plaintiff could not have been denied good time or disciplinary credits. *See id.*, ¶¶ C, Attach. D. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and, therefore, do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003).

Plaintiff also fails to allege that he suffered an "atypical and significant deprivation" *See Sandin*, 515 U.S. at 486–87. Indeed, Plaintiff does not provide any allegations regarding the sanctions he received. Plaintiff, therefore, has failed to show that any sanction received was an "atypical" and "significant deprivation." *Id.* Moreover, to the extent Plaintiff takes issue with the loss of his job, as discussed above, he has no liberty or property interest in prison employment. *See supra* Part II.B.1. For the foregoing reasons, Plaintiff fails to state Fourteenth Amendment due process claims against Defendants. Those claims will, therefore, be dismissed.

C. **Civil Conspiracy Claim**

The Court has also liberally construed Plaintiff's complaint to assert a civil conspiracy claim against Defendants. Plaintiff suggests that Defendant Smith was "in complete conspiracy with [Defendant] Milligan to violate Plaintiff's constitutional rights to grievance for redress." (ECF No. 1, PageID.7.)

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

11

Plaintiff provides no allegations regarding any agreement among Defendants, other than the fact that they both work at KCF and that Defendant Smith allegedly assisted Defendant Milligan in writing the misconduct. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567).

Moreover, Plaintiff's conspiracy claim is barred by the intracorporate conspiracy doctrine. The intracorporate conspiracy doctrine states that "if all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Ed.*, 926 F.2d 505, 510 (6th Cir. 1991). Initially applied to claims under 42 U.S.C. § 1985(3), *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839–40 (6th Cir. 1994) (quoting *Hull*, 926 F.2d at 510), the Sixth Circuit has concluded that the intracorporate conspiracy doctrine applies to claims under § 1983 as well, *Jackson v. City of Cleveland*, 925 F.3d 793, 817–19 (6th Cir. 2019). As a result, unless members of the same collective entity (such as the MDOC) are acting outside the scope of their employment, they are deemed to be one collective entity and not capable of conspiring. *Id.* at 819; *see also Novak v. City of Parma*, 932 F.3d 421, 436–37 (6th Cir. 2019) (same).

Here, Defendants are members of the same collective entity—the MDOC. Plaintiff does not even allege, much less show, that Defendants were acting outside the scope of their employment. The "scope of employment" limitation "recognizes a distinction between

12

collaborative acts done in pursuit of an employer's business and private acts done by persons who happen to work at the same place." *Johnson*, 40 F.3d at 840. To bring claims outside of the intracorporate conspiracy doctrine, a plaintiff must allege that the defendants "acted other than in the normal course of their corporate duties." *Id.* Plaintiff's complaint is devoid of facts suggesting that Defendants were acting outside the normal course of their duties, however improperly he believes they may have been exercising those duties. As a consequence, Plaintiff's conspiracy claim under § 1983 is barred by the intracorporate conspiracy doctrine.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Smith will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against Defendant Milligan: (1) Plaintiff's Fourteenth Amendment due process claims; and (2) Plaintiff's civil conspiracy claim. Plaintiff's First Amendment retaliation claim against Defendant Milligan remains in the case.

An order consistent with this opinion will be entered.

Dated:   January 30, 2023                          /s/ *Maarten Vermaat*
                                                                  Maarten Vermaat
                                                                  United States Magistrate Judge